## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## HELENA DIVISION

| | |
|---|---|
| MARK COCHRAN, | Cause No. CV-08-012-H-DWM-RKS |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| WARDEN SAM LAW, | |
| Defendant. | |

This matter comes before the Court on Defendant Sam Law's Motion for Summary Judgment.  (Document 19).  Defendant provided Plaintiff the Notice and Warning as required by Local Rule 56.2.  (Document 22).  Plaintiff did not respond to Defendant's Motion.

## I.  STANDARD

A party is entitled to summary judgment if they can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  That is, where the documentary evidence permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, it believes demonstrate the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but  . . .  must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 248.  The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions.  *Id.*  Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment.  *Id.*

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *Anderson,* 477 U.S. at 249-50.

The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence

on which the jury could reasonably find for the [non-moving party].
The judge's inquiry, therefore, unavoidably asks whether reasonable
jurors could find by a preponderance of the evidence that the plaintiff
is entitled to a verdict.

*Anderson*, 477 U.S. at 252.

In the context of a motion for summary judgment where a litigant is proceeding pro se, the court has an obligation to construe pro se documents liberally and to afford the pro se litigant the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct 2197, 2200 (2007) (per curiam); *Baker v. McNeil Island Corrections Ctr.*, 859 F.2d 124, 127 (9th Cir. 1988).

Here, however, Plaintiff did not file a response to Defendant's Motion for Summary Judgment.  Local Rule 7.1(d)(1)(B) provides that a failure to file a brief by the opposing party may be deemed an admission that the motion is well taken.  But, the Ninth Circuit has held that, "[a] district court may not grant a motion for summary judgment simply because the nonmoving party does not file opposing material, even if the failure to oppose violates a local rule.  However, when the local rule does not require, but merely permits the court to grant a motion for summary judgment, the district court has discretion to determine whether noncompliance should be deemed consent to the motion." *Brydges v. Lewis*, 18 F.3d 651, 652 (9th Cir. 1994)(per curiam)(internal citations omitted).

Given that Plaintiff is a pro se litigant, the Court will not deem Plaintiff's failure to respond as consent to the motion and will review Defendant's Motion to determine whether summary judgment is appropriate.

## II.    STATEMENT OF FACTS[1]

While incarcerated at Crossroads Correctional Center on February 7, 2006, Plaintiff was riding in the back of a prison transport van which was moving at slow speed.  The officers driving the van stopped abruptly to avoid collision with a sally port gate.  Following the abrupt stop, Plaintiff walked into the prison, and to the prison's medical facility, without assistance and of his own accord. (Document 21: Defendant's Facts ¶ 10 citing Document 21-1:  Law Affidavit ¶ 8).

Plaintiff was seen by prison medical staff, Nurse Emory, on 2/7/06 immediately following the incident in the transport van.  Nurse Emory noted Plaintiff had one centimeter triangular abrasions to his knees, but no other visible injuries at that time.  Nurse Emory prescribed Ibuprofen and scheduled an appointment for Plaintiff to see a medical doctor on February 8, 2006.  Nurse Emory also placed lifting and exercise restrictions on Plaintiff until Plaintiff's

---

[1]The Court has utilized Defendant Law's Statement of Undisputed Facts in formulating this statement of facts as Plaintiff did not respond and did not file a Statement of Genuine Issues as required by Local Rule 56.1(b).

medical evaluation the next day.  Plaintiff agreed with Nurse Emory's course of treatment.  (Document 21: Defendant's Facts ¶ 11 citing Document 21-1:  Law Affidavit ¶ 8; Document 21-2:  Gianarelli Affidavit ¶ 3).

The next day, February 8, 2006, Plaintiff was evaluated by Dr. Todd Gianarelli at approximately 12:10 p.m.  Dr. Gianarelli is a physician licensed to practice medicine in Montana and board certified in family practice.  Dr. Gianarelli is employed at Browning IHS, and also provides medical services at Crossroads approximately six hours per week.  Dr. Gianarelli documented some bruising to Plaintiff's right shoulder, complaints of stiffness in Plaintiff's neck, and that Plaintiff was protecting his neck during the visit.  Warden Law photographed Plaintiff's neck at that time, noting only some reddening on the back of Plaintiff's neck. (Document 21: Defendant's Facts ¶ 12 citing Document 21-1: Law Affidavit ¶ 10; Document 21-2:  Gianarelli Affidavit ¶ 2, 4).

During his evaluation with Dr. Gianarelli on February 8, 2006, Plaintiff complained he had lost consciousness and also complained of neck pain.  Dr. Gianarelli recommended Plaintiff be sent to Marias Medical Center for CT scans and further evaluation.  (Document 21: Defendant's Facts ¶ 13 citing Document 21-1:  Law Affidavit ¶ 11; Document 21-2:  Gianarelli Affidavit ¶ 5).

That same day, Plaintiff was placed in full cervical restraints and transferred to the Marias Medical Center in Shelby for CT scans of his head and neck.  Dr. Lance Stewart treated Plaintiff at Marias Medical Center, ordering CT scans of Plaintiff's lumbar, thoracic and cervical spine, and head.   CT scans of each of these areas were performed and read by Dr. William Benedetto.  (Document 21: Defendant's Facts ¶ 14 citing Document 21-1:  Law Affidavit ¶ 12; Document 21-2:  Gianarelli Affidavit ¶ 6).

Plaintiff's CT scans returned negative for injury to his neck.  Specifically, Plaintiff's CT scan of his head was negative with the exception of sinus disease involving the ethmoids, frontals and sphenoid sinuses.  Plaintiff's lumbar and thoracic spine CT scans were also negative for injury.  Plaintiff's cervical CT scans showed, according to Dr. Benedetto, "no definite acute bony injury to cervical spine."  Another CT scan of Plaintiff's cervical spine showed, "normal alignment without evidence of gross vertebral body fracture is present" and "upper thoracic spine and very low cervical spine are slightly limited due to artifact due to patient's large body habitus."  (Document 21: Defendant's Facts ¶ 15 citing Document 21-1:  Law Affidavit ¶ 13; Document 21-2:  Gianarelli Affidavit ¶ 7).

Upon his return from Marias Medical Center on February 8, 2006, Plaintiff

was again seen by prison medical staff as noted in his medical chart.  Plaintiff was prescribed Robaxin and Ibuprofen as well as warm compresses by the physicians at Marias Medical Center.  Plaintiff was provided towels and instruction on use of warm compresses by Crossroads medical staff.  Plaintiff's medical chart states Plaintiff told medical staff, "X-Rays Neg."  The Marias Medical Center's discharge notes requested Crossroads medical staff re-evaluate Plaintiff on February 9, 2006 or the day after.  (Document 21: Defendant's Facts ¶ 16 citing Document 21-1:  Law Affidavit ¶ 14; Document 21-2:  Gianarelli Affidavit ¶ 8).

On February 9, 2006, Plaintiff was evaluated by Crossroads medical staff who discontinued Robaxin, and prescribed Toradol 60 mg and Flexeril 10 mg. (Document 21: Defendant's Facts ¶ 17 citing Document 21-1:  Law Affidavit ¶ 15; Document 21-2:  Gianarelli Affidavit ¶ 9).

On February 11, 2006, Plaintiff filed an inmate grievance regarding the February 7, 2006 van incident.  Warden Law investigated the incident, and responded by memorandum dated March 8, 2006.  As a result of the investigation, Warden Law concluded Plaintiff was not denied medical care for his neck injury. (Document 21: Defendant's Facts ¶ 17 citing Document 21-1:  Law Affidavit ¶ 7).

On February 23, 2006, Plaintiff submitted a sick call request to prison staff

indicating he had neck pain.  In response, Plaintiff was referred to the Crossroads medical department and was treated by Dr. Gianarelli on February 24, 2006.  Dr. Gianarelli prescribed Flexeril and Ibuprofen.  (Document 21: Defendant's Facts ¶ 18 citing Document 21-1:  Law Affidavit ¶ 16; Document 21-2:  Gianarelli Affidavit ¶ 10).

On March 3, 2006, Plaintiff again submitted a sick call complaining of neck pain, among other things.  Plaintiff was referred to see a medical doctor on March 8, 2006, and saw Dr. Gianarelli on that date.  Dr. Gianarelli evaluated Plaintiff and prescribed Ibuprofen and Flexeril.  (Document 21: Defendant's Facts ¶ 19 citing Document 21-1:  Law Affidavit ¶ 17; Document 21-2:  Gianarelli Affidavit ¶ 11).

Plaintiff was next treated for neck-related issues on June 1, 2006 when he was seen by Crossroads medical staff for a scheduled chronic-care follow up visit. Plaintiff was prescribed Ibuprofen from June 2, 2006 through the date of his transfer from Crossroads on October 31, 2006.   (Document 21: Defendant's Facts ¶ 20 citing Document 21-1:  Law Affidavit ¶ 18; Document 21-2:  Gianarelli Affidavit ¶ 12).

Plaintiff was not housed at Crossroads at any time after October 31, 2006. (Document 21: Defendant's Facts ¶ 21 citing Document 21-1:  Law Affidavit ¶

19).

Each time Plaintiff requested medical treatment for neck-related complaints after the February 7, 2006 incident in the prison transportation van, he was referred quickly to see medical staff who treated him.  (Document 21: Defendant's Facts ¶ 22 citing Document 21-1:  Law Affidavit ¶ 20).

## III.  ANALYSIS

Plaintiff's allegations are construed as claims under the Eighth Amendment of the United States Constitution.  The Eighth Amendment requires that prisoners receive adequate medical care, including mental health care.  *Estelle v. Gamble,* *429 U.S. 97, 104 (1976)*; *see also* *McGuckin v. Smith*, *974 F.2d 1050, 1059 (9th* *Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller*, *104* *F.3d 1133 (9th Cir. 1997*).  To state an arguable section 1983 claim for failure to provide medical care, a prisoner must allege a defendant's "acts or omissions [were] sufficiently harmful to evidence a deliberate indifference to serious medical needs." *Estelle*, *429 U.S. at 106*; *Toussaint v. McCarthy*, *801 F.2d 1080, 1111* *(9th Cir. 1986).*

Deliberate indifference under the Eighth Amendment involves the consideration of two elements:  "[1] the seriousness of the prisoner's medical

need[;] and [2] the nature of the defendant's response to that need." *McGuckin, 974 F.2d at 1059*; *see also Lolli v. County of Orange, 351 F.3d 410, 419 (9th Cir. 2003)*.  That is, a plaintiff must demonstrate "'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care.  Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation." *Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002)*(citing *Wallis v. Baldwin, 70 F.3d 1074, 1076 (9th Cir. 1995)*).

The objective component of deliberate indifference requires the showing of a serious medical need.  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'." *McGuckin, 974 F.2d at 1059 (9th Cir. 1992)* (quoting *Estelle, 429 U.S. at 104*); *see also Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)*.  "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estelle, 429 U.S. at 104-105*.

The subjective component of deliberate indifference considers the nature of the defendant's response to the serious medical need and whether the defendant

had a culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)(quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[T]he official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Frost*, 152 F.3d at 1128 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)). "This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 citing *McGuckin*, 974 F.2d at 1060. "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Id.*

The accident in which Plaintiff was injured occurred on February 7, 2006. Plaintiff was immediately seen by medical staff, prescribed Ibuprofen, and scheduled to see the doctor. Plaintiff saw Dr. Gianarelli on February 8, 2006 and upon Dr. Gianarelli's recommendation was sent to the Marias Medical Center for

CT scans of his lumbar, thoracic and cervical spine, and head.  Those scans were

negative for injury.  Plaintiff was prescribed Robaxin and Ibuprofen and warm

compresses.  This treatment was followed up on by prison medical staff.  Plaintiff

was seen again by Crossroads medical staff regarding his neck on February 9,

2006; February 24, 2006; March 6, 2006; and June 1, 2006.  Plaintiff left

Crossroads on October 31, 2006.  Each time Plaintiff requested medical treatment

for his neck after the February 7, 2006 accident, he was referred quickly to

medical staff.

Under these undisputed facts, there is no evidence of deliberate indifference

to a serious medical need.  Summary judgment for Defendant Law is appropriate.

## IV.  CONCLUSION

Plaintiff's claims against Warden Law are insufficient to survive summary

judgment.  Plaintiff failed to respond to Defendant's Motion and therefore, as a

matter of law, failed to produce sufficient evidence to overcome the undisputed

evidence and medical testimony presented by Defendant Law.  As such, the Court

will certify that any appeal of this matter would not be taken in good faith.

### A.  "Strike" under 28 U.S.C. § 1915(g)

The Prison Litigation Reform Act (PLRA) prohibits prisoners from bringing

forma pauperis civil actions if the prisoner has brought three or more actions in

federal court that were dismissed for frivolousness, maliciousness, or for failure to

state a claim.  28 U.S.C. § 1915(g).  The Court should designate this case as a

"strike" under this provision because Plaintiff's claims when provided with the

undisputed facts are frivolous.

### B.  Certification Regarding Appeal

The Federal Rules of Appellate Procedure provide as follows:

> [A] party who was permitted to proceed in forma pauperis in the
> district-court action, or who was determined to be financially unable
> to obtain an adequate defense in a criminal case, may proceed on
> appeal in forma pauperis without further authorization, unless:
> (A) the district court-before or after the notice of appeal is
> filed-certifies that the appeal is not taken in good faith or finds that
> the party is not otherwise entitled to proceed in forma pauperis and
> states in writing its reasons for the certification or finding;

Fed.R.App.P. 24(a)(3)(A).

Analogously, 28 U.S.C. § 1915(a)(3) provides "[a]n appeal may not be

taken in forma pauperis if the trial court certifies in writing that it is not taken in

good faith."  The good faith standard is an objective one.  *See Coppedge v. United*

*States*, 369 U.S. 438, 445 (1962).  A plaintiff satisfies the "good faith" requirement

if he or she seeks review of any issue that is "not frivolous." *Gardner v. Pogue,*

558 F.2d 548, 551 (9th Cir. 1977) (quoting *Coppedge*, 369 U.S. at 445).  For

purposes of section 1915, an appeal is frivolous if it lacks any arguable basis in law or fact. *Neitzke*, 490 U.S. at 325, 327; *Franklin v. Murphy*, 745 F.2d 1221, 1225 (9th Cir. 1984). "[T]o determine that an appeal is in good faith, a court need only find that a reasonable person could suppose that the appeal has some merit." *Walker v. O'Brien*, 216 F.3d 626, 631 (9th Cir. 2000).

The frivolous nature of Plaintiff's claims, in light of the undisputed medical testimony, is so clear no reasonable person could suppose an appeal would have merit. Therefore, the Court should certify that any appeal of this matter would not be taken in good faith.

### C. Address Changes

At all times during the pendency of this action, Plaintiff SHALL IMMEDIATELY ADVISE the Court of any change of address and its effective date. Such notice shall be captioned "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information pertaining to the change of address and its effective date, except if Plaintiff has been released from custody, the notice should so indicate. The notice shall not include any motions for any other relief. Failure to file a NOTICE OF CHANGE OF ADDRESS may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Based upon the foregoing, the Court issues the following:

## RECOMMENDATIONS

1.  Defendant's Motion for Summary Judgment (document 19) should be **GRANTED**.

2.  The Clerk of Court should be directed to close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

3.  The Clerk of Court should be directed to have the docket reflect that the dismissal counts as a strike pursuant to 28 U.S.C. § 1915(g) because Plaintiff's claims are frivolous in light of the undisputed medical evidence.

4.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Fed.R.App.P. 24(a)(3)(A) that any appeal of this decision would not be taken in good faith.  The record makes plain the instant Complaint is frivolous as it lacks arguable substance in fact.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may serve and file written objections to these Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and

Recommendations."

A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1), should not be filed until entry of the District Court's final judgment.

DATED this 10th day of November, 2009.

*/s/ Keith Strong*
Keith Strong
United States Magistrate Judge